**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy Gaebel,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>            Defendant. | No. CV-21-01714-PHX-DGC<br><br>**ORDER** |

Plaintiff Nancy Gaebel seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied Plaintiff's claim for disability insurance benefits. For reasons stated below, the Court will affirm the decision.

**I.     Background.**

Plaintiff is 61-year-old woman with a high school education who has worked as a telephone solicitor, information clerk, and cashier. Administrative Transcript ("Tr.") 55, 113-14. Given her work history and earnings record, Plaintiff was last insured for disability benefits on September 30, 2020. Tr. 40-41.

Plaintiff filed a claim for benefits in August 2016, alleging a disability date of September 1, 2015 due to multiple sclerosis, depression, and anxiety. Tr. 183, 347-48. The claim was denied by state agency physicians at the initial and reconsideration levels. Tr. 144-79. After a hearing, an Administrative Law Judge ("ALJ") denied the claim on

July 19, 2019. Tr. 180-99. On May 14, 2020, the Appeals Council remanded the matter for further proceedings and a new hearing. Tr. 200-04.

Plaintiff and a vocational expert testified at the new hearing on January 14, 2021. Tr. 105-43. The ALJ issued a written decision denying the claim on March 31, 2021. Tr. 37-65. This decision became Defendant's final decision when the Appeals Council denied review on August 12, 2021. Tr. 1-6.

Plaintiff then commenced this action for judicial review. Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 11, 14, 16, 17. Because the ALJ's decision is supported by substantial evidence and not based on legal error, the Court will affirm it.

## II. Standard of Review.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may vacate the decision where it is based on legal error or not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (citation omitted). The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence, and the decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## III. The Five-Step Evaluation Process.

Whether Plaintiff is disabled is determined using a five-step process. Plaintiff must show that (1) she has not engaged in substantial gainful activity since the alleged disability date, (2) she has a severe impairment, and (3) the impairment meets or equals a listed

impairment or (4) her residual functional capacity ("RFC") – the most she can do with her impairments – precludes her from performing past work. If Plaintiff meets her burden at step three, she is presumed disabled and the process ends. If the inquiry proceeds and Plaintiff meets her burden at step four, then (5) Defendant must show that Plaintiff is able to perform other available work given her RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520 (disability in general); 416.920(a) (disability for adults).

Plaintiff has met her burden at steps one and two – she has not engaged in substantial gainful activity since the alleged disability date and has several severe impairments: multiple sclerosis, degenerative disc disease, chronic pain syndrome, anxiety, and depression. Tr. 42-44.[1] The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 44-46. Plaintiff does not challenge this finding. *See* Doc. 14 at 1-2.

The ALJ determined at step four that, through September 30, 2020, the date last insured, Plaintiff had the RFC to perform a range of medium work, including her past work as a cashier. Tr. 42, 46-55.[2] Specifically, the ALJ found that Plaintiff had the following RFC:

> [T]he claimant had the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except [she] can never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; no exposure to hazards such as moving machinery and unprotected heights; simple routine work, involving simple tasks and instructions.

---

[1] Plaintiff also has several non-severe impairments – vitamin-D deficiency, hyperlipidemia, carpal tunnel syndrome, and trigeminal neuralgia. Tr. 43-44. Those impairments, and Plaintiff's anxiety and depression, have been successfully treated with medications and are not relevant here. Tr. 43-44, 49; *see* Doc. 14 at 3 (explaining that this appeal focuses on Plaintiff's multiple sclerosis, fatigue, and memory and concentration problems); Doc. 17 at 4 (same and noting that Plaintiff's memory and concentration problems are separate from her anxiety and depression).

[2] Plaintiff must establish disability prior to the date last insured to receive disability benefits under the Social Security Act. *See* Tr. 41; Doc. 14 at 2 (citing *Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1996)).

Tr. 46.[3]  After discussing the medical records in evidence, opinions of various doctors, and Plaintiff's symptom testimony, the ALJ explained that this RFC assessment "is supported by the objective medical evidence, [Plaintiff's] activities of daily living, and the record as a whole."  Tr. 55.  The ALJ further explained that while Plaintiff "does have some limitations due to her impairments, the record also shows that [her] impairments are not as limiting as she has alleged."  *Id.*

Based on Plaintiff's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that even if Plaintiff could not perform her past work, there are a significant number of jobs she can perform, including cleaner, packager, and laundry worker.  Tr. 55-56.  The ALJ therefore found Plaintiff not disabled within the meaning of the Social Security Act.  Tr. 56-57.

**IV.  Discussion.**

Plaintiff contends that the ALJ erred by (1) giving little weight to the opinions of treating physician Brandon Woods and physician assistant Joe Maidl, (2) failing to explain why she relied on the opinions of state agency physicians William Groh and Ryan Mendoza, and (3) finding that the evidence does not fully support the alleged severity of Plaintiff's symptoms.  Doc. 14 at 1-2, 8, 11-20.  Defendant argues that the ALJ committed no legal error and her decision is supported by substantial evidence.  Doc. 16 at 9-20.

**A.  Dr. Brandon Woods.**

Plaintiff was diagnosed with multiple sclerosis in the 1990's and had very mild symptoms for more than 25 years.  Tr. 530, 536.  She began treating with neurologist Brandon Woods in August 2015 due to mild leg weakness and balancing problems.  Tr. 536.  Dr. Woods observed that Plaintiff had difficulty balancing and could not tandem walk, but the exam otherwise was unremarkable and Plaintiff was in no acute distress.  Tr. 537-38.

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy.  20 CFR §§ 404.1567, 416.967.  Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 CFR §§ 404.1567(c), 416.967(c).

In October 2015, Plaintiff reported blurred vision, memory loss, and fatigue. Tr. 534. An MRI of the brain showed only very mild periventricular white matter changes that likely represented a demyelinating disease, but there was no evidence of active demyelination. Tr. 539-40, 981-82.[4] MRIs of the cervical and thoracic spine showed some degenerative changes and moderate disc disease, but no evidence of acute demyelination, spinal stenosis, neural foraminal stenosis, or significant cord deformity. Tr. 534-35, 542-44, 976-80.

A second MRI of the brain in April 2016 showed a few mild white matter changes. Tr. 532, 973. Plaintiff declined disease modifying therapy, and Dr. Woods resolved to monitor Plaintiff's symptoms over time. Tr. 533, 974.[5] During a follow-up appointment in July 2016, Plaintiff continued to complain of blurred vision, fatigue, and difficulty with memory and balance but denied any new complaints. Tr. 530-31, 971-72.

Plaintiff next visited Dr. Woods in July 2017, complaining of right jaw pain due to trigeminal neuralgia. Tr. 969-970.[6] Plaintiff reported that overall she remained quite stable and denied any other new complaints. Tr. 969. A third MRI of the brain in October 2017 showed no white matter changes compared to earlier MRIs. Tr. 963, 775.

---

[4] A demyelinating disease is any condition that causes damage to the myelin sheath, a protective covering that surrounds brain, optic, and spinal cord nerves. *See* Mayo Clinic, *Demyelinating disease: What can you do about it?*, https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/expert-answers/demyelinating-disease/faq-200585 21# (last visited Sept. 16, 2022). When the myelin sheath is damaged, nerve impulses slow or even stop, causing neurological problems. *Id.* Multiple sclerosis is the most common demyelinating disorder. *Id.*

[5] The United States Food and Drug Administration has approved several disease modifying therapies for multiple sclerosis, which have been found to help reduce the number of relapses, delay progression of disability, and limit new disease activity. *See* National Multiple Sclerosis Society, *Treating MS, Medications*, https://www.nationalmssociety.org/Treating-MSMedications; Multiple Sclerosis Society of America, *Introduction to Treatments for Multiple Sclerosis*, https://mymsaadev.wpengine.com/ms-information/treatments/introduction/ (last visited Sept. 16, 2022).

[6] Trigeminal neuralgia affects the nerve that carries sensation from the face to the brain and causes pain similar to an electric shock. *See* Mayo Clinic, *Trigeminal Neuralgia*, https://www.mayoclinic.org/diseases-conditions/trigeminalneuralgia/symptomscauses/syc-20353344 (last visited Sept. 16, 2022). Plaintiff's trigeminal neuralgia has been successfully treated with medication (gabapentin) and is not relevant here. *See* Tr. 43, 127; Doc. 14 at 3.

Plaintiff continued to visit Dr. Woods on a regular basis over the next few years. Tr. 80, 89, 118, 955-62, 987-1000, 1155-72; *see also* Tr. 48; Doc. 14 at 5-6. In October 2020, Plaintiff continued to complain of fatigue, weakness, and memory and concentration problems. Tr. 1155. She reported difficulty maintaining balance while walking and a lack of coordination in her arms, hands, and fingers. *Id.* She also claimed to be unable to function physically for a sustained amount of time. *Id.* Her physical exam, however, was unremarkable – she was found to have a steady gait, normal bulk and tone, and full strength and normal reflexes in each extremity. *Id.*

Between July 2016 and December 2020, Dr. Woods completed several assessments of Plaintiff's ability to do work-related activities. Tr. 547-48, 894-95, 983-84, 1017-18, 1221-22 (Exs. 2F, 14F, 22F, 26F, 35F). In his opinion, Plaintiff could lift only 10 pounds and could sit, stand, and walk for less than two hours in an 8-hour workday. Plaintiff would be limited in her ability to bend, reach, stoop, and use her hands. She would be moderately limited by pain and fatigue, and would miss five or more days of work each month due to these symptoms. Plaintiff would have moderately severe limitations in performing daily activities, relating to others, and responding to coworkers, supervision, and customary work pressures. She would have a severe limitation in her ability to understand, carry out, and remember instructions. *See id.*; Tr. 52-53.[7]

Under the applicable regulations, the ALJ generally should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a nonexamining physician. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Andrews*, 53 F.3d at 1040-41. Where the treating doctor's opinion is contradicted by other doctors, as in this case, the ALJ may reject the opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830; *see Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983). "The ALJ can meet this burden by setting out a

---

[7] A moderately severe limitation would cause a person to be off task 16-20% of an 8-hour workday, and a severe limitation means being off-task 21% or more of an 8-hour workday. *See, e.g.*, Tr. 548; Doc. 14 at 7-8.

detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.[8]

The ALJ gave little weight to Dr. Woods's opinions "due to their inconsistency with the longitudinal record." Tr. 53. The ALJ noted, for example, that the opinion that Plaintiff "would have social interaction limitations is inconsistent with treatment records showing that she was pleasant and/or cooperative with examiners." *Id.* (citing Exs. 9F/3, 28F/3, 33F/2). The ALJ explained that the "treatment records do not support a finding of any limitation in interacting with others[,]" and Plaintiff "also reported to examiners that she has friends, and enjoys socializing when possible." *Id.* (citing Ex. 28F/1). The ALJ found other limitations opined to by Dr. Woods, "such as limited use of the bilateral hands, [to be] inconsistent with physical examination evidence showing full motor strength throughout her extremities (5F/1, 20F/1, 24F/1, 25F/3, 29F/5), and a full range of motion (8F/2, 20F/1)." *Id.*

Plaintiff notes that Dr. Woods did not opine that she could never interact socially and never use her hands, and instead found moderate limitations in this regard. Doc. 14 at 13. But the ALJ reasonably found that the evidence does not support any limitation in Plaintiff's ability to socially interact. Tr. 53. The ALJ provided this explanation:

> In interacting with others, the claimant has no limitation. The claimant has not alleged difficulty interacting with others. (6E/6, Hearing). In addition, examiners consistently describe the claimant as pleasant and/or cooperative. (9F/3, 28F/3, 33F/2). The claimant has reported to treating mental health providers that she spends time with friends, attends church and has been in a relationship (Exhibit 4F/40, 6F/4, 28F/58). She has also stated that she has a good relationship to her siblings, has friends and socializes as much as possible (6F/20). In addition, she also reported letting a friend move into her home (36F/29).

---

[8] In 2017, the Commissioner revised the regulations to eliminate the hierarchy of medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, which apply to claims filed after March 26, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These new regulations do not apply here because Plaintiff filed her claim for disability benefits in August 2016. *See* Tr. 347-48; Docs. 14 at 12 n.5, 16 at 14 & n.7.

Tr. 45. The ALJ also noted that multiple physical examinations – including those performed by Dr. Woods – showed that Plaintiff had full strength and range of motion in her hands, which is inconsistent with the moderate limitation found by Dr. Woods. Tr. 48, 51, 53 (citations omitted).

"[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole, or by objective medical findings[.]" *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations omitted). And to the extent "the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence." *Johnson v. Kijakazi*, No. 2:21-CV-01993-EJY, 2022 WL 3585840, at *6 (D. Nev. Aug. 22, 2022) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999)). The ALJ's decision to discount Dr. Woods's opinion that Plaintiff was moderately limited in her ability to socially interact and use her hands is supported by substantial evidence, as shown by the reasons given by the ALJ for this conclusion. Because the ALJ's interpretation of the evidence is rational, the Court must defer to that interpretation. *See Magallanes*, 881 F.2d at 750; *Andrews*, 53 F.3d at 1039-40; *Juarez v. Colvin*, No. CV 13-2506 RNB, 2014 WL 1155408, at *2 (C.D. Cal. Mar. 20, 2014) ("It is not the Court's role to second-guess an ALJ's rational interpretation of the evidence merely because plaintiff is able to proffer an alternative rational interpretation.") (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

Plaintiff asserts that her ability to see family and friends does not equate to the ability to deal with the public or coworkers on a sustained basis. Doc. 14 at 3. But Plaintiff identifies no evidence showing that her social interaction was sporadic or difficult. *See id.*; Doc. 16 at 17. She reported on several occasions that she attended church, enjoyed socializing and going out with friends, had traveled with a friend to California for vacation, had met a man and was in a good relationship in which they talked daily, and had good relationships with siblings. Tr. 84, 671, 806, 1081, 1119, 1223; *see also* Tr. 49. Given this evidence, the ALJ reasonably determined that Plaintiff has no social limitation that would

preclude each job identified at steps four and five – cashier, cleaner, packager, and laundry worker.  Tr. 55-56.

Plaintiff further asserts that the ALJ failed to consider her report of worsening pain in her arms in March 2018.  Doc. 14 at 13 (citing Tr. 959 (Ex. 21F/5)).  Plaintiff is incorrect.  In thoroughly recounting Plaintiff's medical history, the ALJ specifically noted that, "[o]n March 13, 2018, [Plaintiff] reported pain in her legs, *arms*, and low [back].  (Exhibit 21F, p. 5)."  Tr. 48 (emphasis added).  The ALJ went on to note that objective findings support some of Plaintiff's allegations, and that they were accounted for in the RFC assessment.  *Id.*[9]

Plaintiff contends that the ALJ did not address other limitations opined to by Dr. Woods.  Doc. 14 at 13-14.  But the ALJ identified each limitation contained in Dr. Woods's opinions and made clear that, "[a]lthough provided by a treating source, these opinions have been assigned little weight due to their inconsistency with the longitudinal record."  Tr. 52-53 (citing Exs. 2F, 14F, 22F, 26F, 35F).  Earlier in her decision, the ALJ discussed Plaintiff's treatment relationship with Dr. Woods and repeatedly noted that: (1) multiple MRIs showed only mild white matter changes with no evidence of active demyelination; (2) mental examinations showed Plaintiff to be alert and oriented, with normal mood and affect and intact insight, judgment, and cognitive function; (3) physical examinations showed normal gait, motor strength, and range of motion; (4) Plaintiff reported doing well with pain medication but did not take the medication regularly; and (5) Plaintiff managed her symptoms without disease modifying therapy.  Tr. 47-52.

In reviewing the decision to deny benefits, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion."  *Magallenes*, 881 F.2d at 755; *see Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (citations and quotation marks

---

[9] Defendant notes that Plaintiff also reported adequate pain control with medication.  Doc. 16 at 18 (citing Tr. 1198, 1208 ("Patient reports adequate pain control on current regimen[.]")).

omitted). Considering the record and the ALJ's decision as a whole, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving little weight to Dr. Woods's opinions.[10]

### B. Physician Assistant Joe Maidl.

Joe Maidl, a certified physician assistant ("PA"), completed an assessment of Plaintiff's ability to do work-related activities on June 21, 2017. Tr. 892-93 (Ex. 13F). He opined that Plaintiff had moderately severe limitations in concentration and staying on task due to diffuse pain, weakness, headaches, and fatigue, had moderate limitations from medication side effects (constipation and dizziness), and would miss five or more days of work per month. *Id.*[11]

The ALJ gave the opinion "little to no weight due to its inconsistency with the evidence." Tr. 54. The ALJ explained that the finding that Plaintiff "would have moderate limitations due to medication side effects such as constipation and dizziness is inconsistent with [her] reports to examiners that she experiences no medication side effects." *Id.* (citing Exs. 25F/5, 33F/20 (Tr. 1005, 1192)). The ALJ also noted that "[t]here is no reason to believe that [Plaintiff] would have absences from work due to her symptoms as they were consistently reported as well controlled with medication." *Id.*

The ALJ correctly noted that Plaintiff's symptoms were controlled with medication and she reported no side effects during medical appointments. *See* Tr. 1005 (November 2018 treatment note indicating that Plaintiff was "[d]oing well with pain medications for Multiple Sclerosis . . . and report[ed] no adverse side effects"); Tr. 1192 (March 2020 note

---

[10] Defendant notes, correctly, that the ALJ's discussion of similar limitations identified by other medical sources makes clear why the ALJ did not accept certain limitations found by Dr. Woods. Doc. 16 at 16-18; *see Magallanes*, 881 F.2d at 755 ("It is proper for us to read the paragraph discussing Dr. Pont's findings and opinion, and draw inferences relevant to Dr. Fox's findings and opinion[.]"); *Cordova v. Colvin*, No. CV 13-7260-AS, 2015 WL 4451418, at *6 (C.D. Cal. July 20, 2015) ("[T]he ALJ is not required to discuss every piece of evidence in the record. Because substantial evidence supports the ALJ's finding that Dr. Chin's opinion should not be given controlling weight, the ALJ need not address each of the limitations provided by that doctor.") (citing *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)).

[11] Dr. Andrew Wright, Plaintiff's primary care physician, co-signed the opinion on July 3, 2017. Tr. 986 (Ex. 23F/2).

- 10 -

stating that Plaintiff "continues to utilize medications to control the pain, and to maintain [her] functional status and quality of life[,]" and that she "denies any side effects of medications, such as constipation, nausea, vomiting, or excessive sedation"). Plaintiff contends that the fact side effects were denied at two appointments does not invalidate PA Maidl's opinion. Doc. 14 at 15. But at many other appointments Plaintiff also "report[ed] adequate pain control . . . and denie[d] any side effects or adverse reactions." Tr. 1184-1208. The ALJ also cited to Plaintiff's hearing testimony in which she denied side effects from her current medication. Tr. 54, 121.

Ultimately, "it is for the ALJ, and not the [C]ourt, to weigh evidence and resolve conflicts in the record." *Knak v. Comm'r of Soc. Sec.*, No. 2:20-CV-943-KJN, 2021 WL 4078016, at *4 (E.D. Cal. Sept. 8, 2021) (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)). And contrary to Plaintiff's suggestion, the ALJ's rejection of PA Maidl's opinion easily "clear[s] the low substantial evidence bar." *Ford*, 950 F.3d at 1159; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that the "substantial evidence" threshold "is not high"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Ultimately, the evidence on [the] issue [of improvement with treatment] points in either direction. Because substantial evidence is a relatively low evidentiary threshold and highly deferential, *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009), the ALJ's interpretation of the evidence was reasonable.").

Plaintiff's reliance on *Orn* is misplaced. Doc. 14 at 15. The Ninth Circuit explained in *Orn* that because the primary function of medical records is to promote communication and recordkeeping for healthcare personnel – and not to provide evidence for disability determinations – it does not require that "a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record." 495 F.3d at 634. But nowhere in *Orn* did the Ninth Circuit suggest that an ALJ may not consider inconsistencies

in the record when assigning weight to medical opinions. The regulations make clear that "[a]n ALJ may give less weight to [an] opinion when it is inconsistent with the overall record." *Christian v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08107-PCT-JZB, 2019 WL 4750126, at *3 (D. Ariz. Sept. 30, 2019) (citing 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")); *see also* 20 C.F.R. §§ 404.1429(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history . . . and statements by your medical sources[.]"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ found that Dr. Nachenberg's Questionnaire responses were inconsistent with the medical records. . . . The incongruity between Dr. Nachenberg's Questionnaire responses and [the] medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations."); *Abrahams v. Kijakazi*, No. CV 20-158-BLG-TJC, 2022 WL 899512, at *3 (D. Mont. Mar. 28, 2022) ("The ALJ also noted that Plaintiff's testimony that his medications caused significant side effects was inconsistent with his treating physician's records that clearly indicated Plaintiff reported no side effects. . . . The ALJ's observations are consistent with the medical record.").

In short, the ALJ reasonably evaluated the record evidence that conflicted with PA Maidl's opinion that Plaintiff had moderate limitations from medication side effects and would miss five or more days of work per month.

**C.     Drs. William Groh and Ryan Mendoza.**

Plaintiff contends that the ALJ failed to explain why she relied on the opinions of state agency physicians William Groh and Ryan Mendoza. Docs. 14 at 15, 17 at 8. The Court does not agree.

Dr. Groh reviewed Plaintiff's medical records and completed a physical RFC assessment in January 2018. Tr. 896-904 (Ex. 15F). He opined that Plaintiff could perform

a range of medium work with certain restrictions, such as avoiding exposure to hazards and never climbing ladders, ropes, or scaffolds due to her pain and medications.  *Id.*

The ALJ gave the opinion significant weight "due to its consistency with the longitudinal record."  Tr. 52.  The ALJ further explained:

> [The] finding that the claimant would remain capable of medium work is consistent with objective medical evidence such as negative straight leg raise testing.  (8F/2).  The finding is also supported by examinations of the claimant that generally showed that she had full motor strength throughout her extremities (5F/1, 20F/1, 24F/1, 25F/3, 29F/5), a normal gait (8F/2, 20F/1, 25F/3, 29F/5, 33F/5, 36F/13), and a full range of motion (8F/2, 20F/1).

*Id.*  Plaintiff asserts that "the ALJ's rationale cannot be discerned[,]" but presents no argument in support of this assertion.  Docs. 14 at 15, 17 at 7.  Indeed, Plaintiff does not even discuss the reasons the ALJ provided for giving significant weight to Dr. Groh's opinion.  *See id.*

Dr. Mendoza completed a mental RFC assessment in January 2018.  Tr. 905-08 (Ex. 16F).  He opined that Plaintiff could understand and remember simple and low-level detailed tasks, sustain concentration, persistence, and pace for at least two hours at a time, complete a normal workweek despite occasional psychological interruptions, maintain appropriate relationships with infrequent interaction with peers and supervisors and limited public interaction, and adapt to routine, infrequent, and non-intense workplace stress and changes.  *Id.*

The ALJ gave the opinion partial weight "due to some inconsistency with the objective medical evidence."  Tr. 54.  The ALJ explained that the "finding that the claimant would have moderate limitations in areas such as social interaction is inconsistent with treatment records wherein the claimant is consistently described as pleasant and/or cooperative.  (9F/3, 28F/3, 33F/3)."  The ALJ also noted, however, that "identifying a moderate limitation in the claimant's ability to concentrate is consistent with her hearing testimony regarding impaired cognition."  *Id.*  Plaintiff does not address the ALJ's

reasoning, nor has she otherwise shown that the ALJ erred in giving partial weight to Dr. Mendoza's opinion. *See* Docs. 14 at 15, 17 at 7.

Plaintiff notes that the opinion of a nonexamining physician may not itself serve as substantial evidence to support a finding that the claimant is not disabled. Doc. 14 at 13 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017); *Lester*, 81 F.3d at 831). But as explained in *Lester*, the Ninth Circuit has "upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor." 81 F.3d at 831. In *Magallanes*, for example, this Circuit "stated that in rejecting the opinion of a treating physician, 'the ALJ did not rely on the nonexamining physician's testimony *alone* to reject the opinions of Magallanes's treating physicians.'" *Id.* (quoting *Magallanes*, 881 F.2d at 752, and noting that "there was an abundance of evidence that supported the ALJ's decision" in that case). This Circuit also has made clear that opinions of nonexamining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted).

The ALJ did not rely solely on the opinions of Drs. Groh and Mendoza, and because the doctors' opinions are consistent with some of the objective medical evidence, their opinions constitute substantial evidence upon which the ALJ properly could rely. Indeed, the two opinions together exceed the "low substantial evidence bar" – they represent more than a mere scintilla of evidence to support the ALJ's findings and decision. *Ford*, 950 F.3d at 1159.

The ALJ assigned partial weight to the opinions of several other nonexamining physicians. *See* Tr. 52-54 (discussing the opinions of Drs. Cunningham, Penner, Goldberg, and Yoches). Plaintiff references these opinions in a footnote, but admittedly does not discuss them "at length." Doc. 14 at 6-7 n.4. Plaintiff has thus failed to show that the opinions do not constitute substantial evidence supporting the ALJ's decision.[12]

---

[12] It is worth noting that the ALJ carefully considered the opinions and rejected them in part to the extent they found that Plaintiff had no exertional limitations because that finding is inconsistent with exams showing tenderness to palpation of the spine, imaging

- 14 -

### D. Plaintiff's Symptom Testimony.

At the hearing in March 2019, Plaintiff testified that she had fatigue, memory and concentration problems, and pain in her shoulders and back that sometimes radiated down her legs. Tr. 82-83, 90. She could lift and carry 10 pounds, sit for 20-30 minutes, stand for 30-45 minutes if she had something to lean on, and walk a quarter a mile. Tr. 83-84. She could make simple food, dry mop the house, and sometimes do a load of laundry. Tr. 84. She would lie down for 20-30 minutes several times a day and showered two or three times a week because of fatigue. Tr. 85-88. She occasionally used a cane to keep her balance. Tr. 89.

At the hearing in January 2021, Plaintiff again testified that she needed to lie down several times a day because of fatigue and had problems concentrating and remembering things. Tr. 124-129. She further stated that she was depressed, tired, and did not want to do anything. Tr. 127. She explained that she takes no medication for multiple sclerosis because she is worried about possible side effects. Tr. 121; *see also* Doc. 14 at 9-10.

The ALJ did not completely reject Plaintiff's testimony about the severity of her symptoms, but instead found that Plaintiff's symptoms did not render her unable to engage in a range of medium work with certain restrictions. *See* Tr. 51-55. Specifically, the ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 47. The ALJ also considered other factors in assessing Plaintiff's symptom testimony and how those factors affect her ability to work, including her "daily activities; the nature of the symptoms; precipitating and aggravating factors; the medications and any side effects; and other treatment followed and measures used to relieve the symptoms." Tr. 51 (citing 20 C.F.R. § 404.1529; SSR 16-3p).

---

studies revealing degenerative disc disease, and Plaintiff's treatment with oxycodone. Tr. 52 (citing Exs. 5F/1, 33F/5). The ALJ also rejected the finding that Plaintiff would have no limitations involving concentration given her reports of brain fog, fatigue, and intermittent confusion. Tr. 53-54 (citing Exs. 21F/17, 24F/1).

Because there is no evidence of malingering, the ALJ could discount Plaintiff's testimony about the severity of her symptoms only by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "The ALJ must specify what testimony is not credible and identify the evidence that undermines [Plaintiff's] complaints – general findings are insufficient." *Burch*, 400 F.3d at 680 (citation omitted); *see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (finding insufficient the ALJ's "boilerplate statement" that the claimant's symptom testimony was "not entirely consistent with the objective medical evidence").

Plaintiff contends that the ALJ's reasons for discounting her symptom testimony are insufficient. Doc. 14 at 17. The Court does not agree. A careful review of the record and the ALJ's decision shows that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

Regarding Plaintiff's allegations of radiating pain and fatigue, the ALJ found that the evidence of record does not fully support Plaintiff's allegations about the severity of these symptoms. Tr. 51. The ALJ noted that "the record reveals that [Plaintiff] had a full range of motion throughout her extremities (8F/2, 20F/1), a normal gait (8F/2, 20F/1, 25F/3, 29F/5, 33F/5, 36F/13), and full motor strength (5F/1, 20F/1, 24F/1, 25F/3, 29F/5)." *Id.*

With respect to Plaintiff's multiple sclerosis, the ALJ explained that "[m]ultiple examiners . . . note[d] that MRI imaging of [Plaintiff's] brain show 'only a very few mild' white matter changes." *Id.* (citing Ex. 21F/19). The ALJ also noted Plaintiff's "lack of medical treatment for the condition within the evidentiary record." *Id.* (citing Ex. 1F/3 and hearing testimony). The ALJ explained that Plaintiff's "use of medication is not what would be expected given her complaints of disabling pain and symptoms associated with multiple sclerosis." Tr. 47. While Plaintiff sometimes took oxycodone for pain, she declined to participate in any disease modifying therapy for multiple sclerosis (Exs. 1F, 21F), which "strongly suggests that her symptoms are not as severe as alleged." *Id.* The

ALJ also noted that Plaintiff's intermittent use of oxycodone and lorazepam "strongly suggests her symptoms were not more limiting than [the ALJ] found[.]" Tr. 48 (citing Ex. 5F/1).

As for Plaintiff's cognitive impairments, the ALJ explained that "treatment records show that her insight and judgment were intact (9F/3, 28F/3, 36F/26), her cognitive function was intact (20F/1, 25F/3, 33F/2), she had a normal mood and affect (9F/3, 36F/26), and she was consistently alert and oriented (29F/5, 32F/15, 33F/5), which is inconsistent with [her] testimony and subjective allegations." Tr. 51.

The ALJ noted that Plaintiff lived alone and was able to perform some largely independent daily activities, including driving, grocery shopping, and household chores. *Id.* (citing Ex. 10F/3 and hearing testimony). Finally, the ALJ noted that Plaintiff testified that she had experienced no adverse side effects from her current medications. Tr. 51-52.

Plaintiff asserts that the ALJ "did not explain how not taking multiple sclerosis-specific medications rendered the entirety of [Plaintiff's] symptom testimony invalid." Doc. 14 at 18. But the ALJ did not find the testimony entirely invalid; she instead found the testimony to be "partially consistent with the objective evidence of record." Tr. 52. The ALJ also did not err in considering Plaintiff's lack of treatment with a disease modifying therapy in weighing Plaintiff's testimony. *See David I. K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-5904-DWC, 2022 WL 4008216, at *3 (W.D. Wash. Sept. 2, 2022) ("The amount, type, and effectiveness of treatment are important considerations when weighing a claimant's allegations. Furthermore, the failure to follow treatment can 'cast doubt on the sincerity' of the claimant's testimony concerning her symptoms.") (citing *Fair v. Bowen*, 533 F.2d 597, 603 (9th Cir. 1989); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p)); *Raul. V. v. Kijakazi*, No. 20-CV-2014-BGS, 2022 WL 3567008, at *5 (S.D. Cal. Aug. 18, 2022) ("As an additional factor, the ALJ can consider that Plaintiff's treatment history was inconsistent with his alleged symptoms.") (citing 20 C.F.R. § 404.1529; SSR 16-3p).

The ALJ explained that even if Plaintiff had experienced the severity of symptoms alleged, there is no reason to believe that her symptoms would not improve with appropriate treatment. Tr. 47; *see Vetrano v. Berryhill*, No. EDCV 17-02440-JEM, 2019 WL 1060037, at *10 (C.D. Cal. Mar. 5, 2019) ("Impairments that can be controlled with medication and treatment are not disabling.") (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). Plaintiff notes that she was concerned about possible side effects (Doc. 14 at 18), but the ALJ correctly found that it would be reasonable to expect a person with disabling symptoms from multiple sclerosis to at least try an appropriate disease modifying therapy (Tr. 47).

Plaintiff complains that the ALJ relied on only one drug screen showing intermittent oxycodone and lorazepam use. Doc. 14 at 19. But the ALJ also noted that Plaintiff herself reported that she did not take the medications regularly. Tr. 48, 663. The ALJ did not err in considering Plaintiff's intermittent use of prescribed medications. *See* 20 C.F.R. §§ 404.1529(c)(iv)-(v); SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f [an] individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Plaintiff asserts that the ALJ made no effort to connect her discussion of the medical evidence to the finding that Plaintiff's symptom testimony was not entirely credible. Doc. 14 at 18. This is not correct. The ALJ cited specific medical evidence that she found inconsistent with Plaintiff's testimony regarding her alleged pain, fatigue, multiple sclerosis, and cognitive impairment. Tr. 48-52. Because the ALJ's interpretation of the evidence was rational, the Court may not second-guess it. *See Magallanes*, 881 F.2d at 750; *Andrews*, 53 F.3d at 1039-40; *Burch*, 400 F.3d at 679.

Plaintiff notes that the ALJ did not find that she spent a substantial part of a typical day doing activities that are consistent with the ability to work. Doc. 14 at 19. True, but an ALJ need not find that a claimant's daily activities show an ability to work in order to discount conflicting symptom testimony. To the contrary, "even where a claimant's

activities suggest some difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of functional limitation the claimant has alleged." *Nazarian v. Berryhill*, No. CV 17-1114 JC, 2018 WL 2938581, at *7 (C.D. Cal. June 7, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see Valentine*, 574 F.3d at 694 (the ALJ properly recognized that daily activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated"). The ALJ reasonably found that Plaintiff's activities – driving, grocery shopping, cleaning, walking her dog, doing crafts, going to church, traveling out-of-state for vacation, dating, and socializing with family and friends – were inconsistent with her alleged disabling symptoms. *See* Tr. 49-51; *Burch*, 400 F.3d at 680-81 ("Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and 'we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'") (quoting *Magallanes*, 881 F.2d at 750); *Thomas*, 278 F.3d at 959 (explaining that the ALJ may consider daily activities when weighing the claimant's credibility, and, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing").[13]

**IT IS ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits (Tr. 1-6, 37-65) is **affirmed**. The Clerk of Court shall enter judgment.

Dated this 20th day of September, 2022.

David G. Campbell
Senior United States District Judge

---

[13] The Court agrees with Plaintiff that her use of a cane, even if not medically necessary, is not a convincing reason to invalidate her symptom testimony. *See* Tr. 50; Doc. 14 at 19-20.